UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
SHEREE NOBLES,                :      CASE NO. 1:14-CV-02400
                                                :
          Plaintiff,             :
                                                :
vs.                                      :      OPINION & ORDER
                                                :      [Resolving Doc. 27]
NORFOLK SOUTHERN RAILWAY CO.,  :
                                                :
          Defendant.           :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Sheree Nobles sues his employer, Defendant Norfolk Southern Railway Co., ("Norfolk Southern") under the Federal Employers Liability Act, the Federal Safety Appliance Act ("FSAA"), and the Federal Locomotive Inspection Act.[1] Plaintiff Nobles says that he was injured when his right hand became pinched in a coupler mechanism he was using.[2]

Defendant Norfolk Southern has moved for summary judgment on Plaintiff Nobles's FSAA claim.[3] For the reasons below, the Court **DENIES** Defendant Norfolk Southern's motion for partial summary judgment.

**I. Factual Background**

Although the parties do not agree on all of the facts related to this case, they do agree on the straightforward set of facts the Court should accept as true for purposes of resolving this summary judgment motion.

---

[1] Doc. 1.

[2] *Id.* at 3.

[3] Doc. 27. Plaintiff Nobles has responded, Doc. 30, and Defendant Norfolk Southern has replied, Doc. 31. The FSAA does not create an independent cause of action, but railroad employees can recover for violations of the FSAA under the Federal Employers Liability Act. *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166 (1969) (internal citations omitted).

Case No. 1:14-CV-002400
Gwin, J.

On September 29, 2013, Plaintiff Nobles was working for Defendant Norfolk Southern as a conductor foreman at Norfolk Southern's Rockport Yard in Cleveland, Ohio.[4] At the time of the injury, Nobles and two other employees were disassembling a train by separating its cars.[5] The cars could then later be used in other trains, but the cars were not immediately being used for any outbound train.[6] Disassembling a train is a type of "switching" maneuver.

Part of the process for separating the cars required Nobles to pull a "cut lever" to release a car or cars from the train. The cut lever is part of a coupling mechanism. The first two times Plaintiff Nobles tried to pull the cut lever that eventually injured him, nothing happened.[7] When he tried a third time, the lever snapped back, severely pinching his hand and causing the injuries that are the subject of this lawsuit.[8]

## II. Law and Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[9] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[10] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable

---

[4] Doc. 27-1 at 26-27.
[5] *Id.* at 27.
[6] *Id.* at 27, 66.
[7] *Id.* at 49-52.
[8] *Id.* at 52, 54.
[9] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[10] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Case No. 1:14-CV-002400
Gwin, J.

issue.[11] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[12] But the Court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[13]

**B.      Federal Safety Appliance Act**

The Federal Safety Appliance Act was enacted near the end of the nineteenth century to improve the safety of railroad workers.[14] To achieve this goal, the FSAA provides that, with certain exceptions not applicable here, "a railroad carrier may use or allow to be used on any of its railroad lines-- (1) a vehicle only if it is equipped with-- (A) couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles."[15] Another FSAA provision says that "a railroad carrier may use or allow to be used on any of its railroad lines-- (5) a train only if" certain "power or train brakes" requirements are met.[16]

As the statutory text makes clear, the FSAA contains an "in use" requirement.[17] But what must be "in use" varies for the FSAA's different provisions. For some, including the coupler provision at issue in this case, it is the "vehicle" that must be "in use," while for others it is the "train" that must be "in use."[18] Whether the "in use" requirement is met is a question of law for the

---

[11] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[12] *Id.* at 586.
[13] *Killion*, 761 F.3d at 580 (internal citation omitted).
[14] *United States v. Seaboard Air Line R.R. Co.*, 361 U.S. 78, 82-83 (1959).
[15] 49 U.S.C. § 20302(a)(1)(A).
[16] *Id.* § 20302(a)(5).
[17] 49 U.S.C. § 20302 ("A railroad carrier may use or allow to be used . . . .").
[18] *Compare id.* § 20302(a)(1)-(3) ("a *vehicle* only if" (emphasis added)), *with id.* § 20302(a)(5) ("a *train* only if" (emphasis added)) One provision, not relevant here, applies to "locomotive[s]." *Id.* § 20302(a)(4).

-3-

Case No. 1:14-CV-002400
Gwin, J.

Court's determination.[19]

Courts have acknowledged and analyzed the differences in what must be "in use" for over a century.[20] In 1915, in *United States v. Erie Railroad Co.*, the Supreme Court said that the difference meant that the power and train brake requirements now found in 49 U.S.C. § 20302(a)(5) did not apply during switching maneuvers because they apply only to "trains," but that the other requirements applied even during switching maneuvers because they apply to "car[s]" (now "vehicle[s]").[21] Although this characterization was dicta in *Erie Railroad*, the Supreme Court has subsequently applied the coupler provision of the FSAA without discussion of the "in use" requirement in cases where the injury occurred during a switching maneuver.[22]

Other courts have taken note of this precedent, and have concluded that a "vehicle" involved in a switching maneuver is "in use."[23] Indeed, these cases have offered an additional persuasive reason for interpreting the FSAA in this manner. Specifically, they note that coupling and decoupling mechanisms are used primarily during switching operations, which suggests that Congress did not intend to exclude switching operations from the statute's coverage.[24]

---

[19] *See Brady v. Terminal R. Ass'n of St. Louis*, 303 U.S. 10, 13 (1938) (resolving the "in use" question); *Erskine*, 814 F.2d at 269-71 (same).

[20] Before 1994, the FSAA used the word "car" instead of "vehicle," but the change in language was not intended to have any substantive effect. *See* An Act to revise, codify, and enact without substantive change certain general and permanent laws, related to transportation, 103 Pub. L. No. 103-272, 108 Stat. 745 (1994). Courts have continued to cite pre-1994 FSAA cases interchangeably with post-1994 FSAA cases, *see, e.g.*, *Hoemmelmeyer v. CSX Transp., Inc.*, No. 1:04-cv-00166, 2005 WL 2124259, at *5 (S.D. Ohio Aug. 30, 2005), as have the parties in this case, *see* Docs. 27, 30-1, 31.

[21] *United States v. Erie R.R. Co.*, 237 U.S. 402, 407-08 (1915).

[22] *See, e.g.*, *Carter v. Atlanta & St. Andrews Bay Ry. Co.*, 338 U.S. 430 (1949); *O'Donnell*, 338 U.S. 384; *San Antonio & Aransas Pass Ry. Co. v. Wagner*, 241 U.S. 476 (1916).

[23] *See, e.g.*, *White v. BNSF Ry. Co.*, No. C09-5188, 2010 WL 1186197 (W.D. Wash. Mar. 23, 2010); *Hoemmelmeyer*, 2005 WL 2124259; *Hardlannert v. Ill. Cent. R.R. Co.*, 928 N.E.2d 172 (Ill. App. Ct. 2010).

[24] *White*, 2010 WL 1186197, at *5 ("Defendant does not meaningfully dispute that it is during switching operations that the individual cars are coupled and uncoupled. If . . . the FSAA's coupling provisions do not apply during switching operations, the coupling provision is rendered meaningless."); *Hardlannert*, 928 N.E.2d at 179 ("[I]t is in the
(continued...)

Case No. 1:14-CV-002400
Gwin, J.

Against this weight of authority, Defendant Norfolk Southern points to several cases it says support its argument that the "in use" requirement stops liability under any part of the FSAA for any incident that occurs during a switching maneuver. Most of these cases are distinguishable from the present case either because they deal with whether a "train," is "in use" rather than whether a "vehicle," is,[25/] or because the vehicle in question had been sent for repairs and was not involved in a switching operation.[26/]

To be sure, in one case, *Phillips v. CSX Transportation, Inc.*, the Fourth Circuit did hold that no part of the FSAA applied during switching maneuvers.[27/] The Fourth Circuit reached this conclusion in the context of a claim alleging defective handbrakes, which, like the coupler provision at issue in this case, requires that the "vehicle" be "in use."[28/]

Defendant Norfolk Southern is correct that this decision, which remains controlling for the Fourth Circuit, is relevant authority. But it does not persuade. The interpretation it reaches–and that Defendant Norfolk Southern urges–fails to give any meaning to the FSAA's distinction between a "train" and a "vehicle."

Nor are *Phillips*'s reasons for declining to follow *Erie Railroad*'s dicta regarding the effect of the distinction between "train" and "car" (now "vehicle") convincing. In a footnote, *Phillips* suggests that the Supreme Court's "later opinions did not recognize such a distinction."[29/] But the

---

[24/](...continued)
very process of coupling railcars during switching operations that couplers perform an essential function.").

[25/]*See, e.g.*, *Erskine*, 814 F.2d 866.

[26/]*See* Crockett v. Long Island R.R., 65 F.3d 274 (2d Cir. 1995); Pinkham v. Maine. Cent. R.R. Co., 874 F.2d 875 (1st Cir. 1989).

[27/]190 F.3d 285 (4th Cir. 1999).

[28/]*Id.*

[29/]*Id.* at 289 n.3 (citing United States v. Seaboard Air Line R.R. Co., 361 U.S. 78, 80 (1959) and United States v. N. Pac. Ry. Co., 254 U.S. 251, 254 (1920)).

Case No. 1:14-CV-002400
Gwin, J.

"later opinions" cited by *Phillips* dealt solely with whether a "train" was "in use" for purposes of the power or train brakes portions of the FSAA,[30] and thus cannot be said to have abandoned the distinction suggested by *Erie Railroad*. By contrast, as noted above, when faced with later suits arising under other parts of the FSAA, the Supreme Court seemed to assume that switching maneuvers count.

The *Phillips* case cannot bear the weight Defendant Norfolk Southern attempts to place on it.[31] Rather, the Court concludes that a "vehicle" engaged in switching maneuvers is "in use" for purposes of the FSAA. Defendant Norfolk Southern's argument that the "vehicle" in this case was not "in use" therefore fails.

### III. Conclusion

For the above reasons, the Court **DENIES** Defendant Norfolk Southern's motion for partial summary judgment.

IT IS SO ORDERED

Dated: May 13, 2015            s/    *James S. Gwin*
                               JAMES S. GWIN
                               UNITED STATES DISTRICT JUDGE

---

[30] *Seaboard*, 361 U.S. at 80; *N. Pac. Ry. Co.*, 254 U.S. at 254.

[31] For similar reasons, the Court does not find persuasive the Eastern District of Pennsylvania's decision in *Thomas v. Reading, Blue Mt. & N. R. R. Co.*, No. 01-5834, 2003 U.S. Dist. LEXIS 6579 (E.D. Pa. Mar. 25, 2003), which Defendant Norfolk Southern's reply brief relies heavily on.